# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

**JESSE J. FLOYD**                                                                                  **PLAINTIFF**

**VS.**                                                  **CIVIL ACTION NO. 3:15cv461-CWR-LRA**

**B. E. BLACKMON, ET AL.**                                                      **DEFENDANTS**

### REPORT AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

This cause is before the undersigned on Defendants' Motion for Summary Judgment [8] and related filings. All moving Defendants[1] assert that the claims of Jesse J. Floyd [hereinafter "Plaintiff" or "Floyd"] should be dismissed due to his failure to exhaust the administrative remedies that were available to him through the Bureau of Prison's ["BOP"] mandatory four-step process set forth in 28 C.F.R. §§ 542.10-542.19. After a review of the pleadings and exhibits, and the applicable law, the undersigned recommends that the motion be granted based upon Floyd's non-exhaustion.

### I.  PROCEDURAL HISTORY

Floyd is a federal inmate incarcerated at the Federal Correctional Complex ("FCC") located in Yazoo City, Mississippi. He filed this civil rights action on June 23,

---

[1] Defendants have filed a Motion to Substitute the United States of America [7] as the sole Defendant, instead of the individuals named and served. Floyd objects. In light of the recommendation, the motion appears to be moot.

2015, claiming that he was denied his First and Fifth Amendment rights by prison officials because he was not allowed two issues of *Heavy Metal Magazine*.[2] According to Plaintiff, Defendants violated his First Amendment rights by denying him the magazines; they violated the Due Process clause of the Fifth Amendment when they:

1. Denied him an opportunity to be heard at a meaningful time and in a meaningful manner;

2. Failed to provide him with timely notice of and an adequate explanation for the decision to reject the publications; and,

3. Failed to implement and operate an adequate administrative remedy program.

Defendants filed the instant motion and attached their supporting exhibits, including the sworn Declaration of Stanley Anderson (Exhibit B, [10-1]).

## II. APPLICABLE LAW

Failure to exhaust is an affirmative defense, so these Defendants have the burden of demonstrating that Floyd failed to exhaust his administrative remedies. *Jones v. Bock*, 549 U.S. 199, 216 (2007). At the summary judgment stage, this means that Defendants "must establish beyond peradventure all of the essential elements of the defense of exhaustion to warrant summary judgment in their favor." *Dillon v. Rogers,* 596 F.3d 260,

---

[2]The Court belatedly sealed Defendants' Exhibit C [10-2] by *ex parte* Order [22] filed February 4, 2016, without notice to Plaintiff. This exhibit contained the rejection letters from the Warden, along with copies of excerpts from the issues rejected. The undersigned denied Plaintiff's request to reconsider [23] by Text Only Order filed July 5, 2016.

266 (5th Cir. 2010).  The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court it would be insufficient to permit the nonmoving party to carry its burden."  *Beck v. Tex. St. Board of Dental Exam'rs*, 304 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)).  The burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial.  *Allen v. Rapides Parish Sch. Bd.*, 304 F.3d 619, 621 (5th Cir. 2000).

As Defendants point out, the applicable section of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997(e), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

This statute clearly requires an inmate bringing a civil rights action in this Court to first exhaust his available administrative remedies.  *Booth v. Churner*, 532 U.S. 731, 739 (2001).  Exhaustion is no longer left to the discretion of the district court, but is mandatory.  *Porter v. Nussle*, 534 U.S. 516, 524 (2002).  Exhaustion will not be excused when an inmate fails to timely exhaust his administrative remedies; the exhaustion requirement also means "proper exhaustion."  *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006).  It is not enough to merely initiate the grievance process or to put prison officials

3

on notice of a complaint; the grievance process must be carried through to its conclusion. *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001). This is so regardless of whether the inmate's ultimate goal is a remedy not offered by the administrative process, such as money damages. *Id.*

In *Jones v. Bock*,(2007), the Supreme Court confirmed that exhaustion was mandatory under the PLRA and that "unexhausted claims cannot be brought in court." 549 U.S. at 211. The Court of Appeals for the Fifth Circuit held that "the PLRA pre-filing exhaustion requirement is mandatory and non-discretionary," and that "district courts have no discretion to waive the PLRA's pre-filing exhaustion requirement." *Gonzalez v. Seal,* 702 F.3d 785, 787-88 (5th Cir. 2012) (per curiam); *Moussazadeh v. Texas Dept. of Criminal Justice*, 703 F.3d 781, 788 (5th Cir. 2012) (quoting *Gonzalez*). The Court specifically stated:

> ... **District courts have no discretion** to excuse a prisoner's failure to properly exhaust the prison grievance process before filing their complaint. **It is irrelevant whether exhaustion is achieved during the federal proceeding.** Pre-filing exhaustion is mandatory, and the case must be dismissed if available administrative remedies were not exhausted.

*Gonzalez*, 702 F.3d at 788 (*emphasis added*).

The Court in *Gonzalez* overruled prior case law giving district courts the discretion to "excuse" an inmate's failure to exhaust before filing suit. *Id.,* overruling *Underwood v. Wilson*, 151 F.3d 292 (5th Cir. 1998). The inmate in *Gonzalez* completed the ARP *after* filing his federal lawsuit. The Court held that this was not sufficient to comply with the PLRA's exhaustion requirements. The holding in the more recent Fifth Circuit case of

4

*Wilson v. Epps*, 776 F.3d 296, 299-300 (5th Cir. 2015), also confirms that strict compliance with the administrative remedy programs is required. Filing the federal lawsuit prior to the time has ended for the response by the ARP program is impermissible for proper exhaustion. *Id.*

### III.  DISCUSSION

**A.    Defendants' Argument and Evidence**

28 C.F.R. §§ 542.10-542.19 contains the four-step administrative remedies process for the Bureau of Prisons. It requires that an inmate first request informal resolution. If this is unsuccessful, the inmate must submit a formal written Administrative Remedy Request directly to the Warden through a BP-9 form within 20 days after the basis for the grievance occurred. Within 20 calendar days of the Warden's response, the inmate may appeal to the Regional Director by filing a BP-10 form. If not satisfied with the Regional Director's response, the inmate may appeal by submitting a BP-11 form to the Bureau's Central Office/General Counsel within 30 days of the Regional Director's response. Appeal to the General Counsel is the final administrative appeal. An inmate must utilize all four levels before exhaustion of his remedies is completed.

Defendants submitted the Affidavit of Stanley Anderson, Deputy Case Management Coordinator at the FCC in Yazoo, in support of their motion. Mr. Anderson is responsible for processing the administrative remedy requests filed by inmates. He has access to and knowledge of the computer records known as SENTRY, which contain

electronic records for tracking inmates in the federal system, including their ARP usage. Mr. Anderson explained the program described in 28 C.F.R. §§ 542.10-542.19.  He explained that each initial form filing, a BP-9, is assigned a number known as a "Remedy ID". This number is unique to that filing and may be used to follow the progression of a remedy from the BP-9 stage through the BP-10 and BP-11 stages.

The rejection of issue No. 270 was on September 2, 2014, and the rejection of Issue No. 272 was on March 30, 2015. [Exhibit C, 10-2].  Therefore, only remedies filed after September 2, 2014, are relevant.  Mr. Anderson reviewed Floyd's SENTRY records associated with Remedy Numbers 796667; 813590; 815870; 816449; 817598; and 824700.  In all of these, Floyd sought remedies for the allegations contained in his Complaint.

**REMEDY 817598 & 816449:**   Mr. Anderson explains that for Remedy ID 817598 and 816449, Floyd began by filing a BP-10 with the Southeast Regional Office instead of filing a BP-9 with the Warden.  Therefore, the grievances were rejected. [10-1, pp. 3-4, p. 13].  The Central Office rejected Floyd's subsequent BP-11's in 816449 and 817598 for the same reasons.

**REMEDY 813590 & 824700**:  According to Mr. Anderson's review, Floyd did properly file a BP-9 and a BP-10 for Remedy 813590, and these were both denied *on their merits* and not on technical grounds.  Floyd filed a BP-11, which was received by the Central Office on June 1, 2015.  However, the Central Office had 40 days from the date of receipt to answer a BP-11.  Rather than wait on the response, Floyd filed his

federal Complaint in this case on June 23, 2015, before the time for the Central Office's response ran. Accordingly, Defendants assert that Remedy 813590 was unexhausted when Floyd filed this suit. [10-1, p. 4, parag. 14].

The same occurred with Floyd's BP-10 at the Regional level for Remedy 824700. The Regional office did not receive Floyd's BP-10 until July 14, 2015, 28 days after Floyd filed his Complaint. Further, Floyd never filed a BP-11 with the Central Office. [10-1, p. 4, parag. 15].

Under the *Gonzalez* case, exhaustion *after* the Complaint is filed is not sufficient, and the Complaint must be dismissed. *Gonzalez*, 702 F.3d at 788. The Court held that it was "irrelevant whether exhaustion is achieved during the federal proceeding." *Id.* Defendants contend that because Floyd did not wait to receive the responses from the Central Office, or the Regional Office, before filing his Complaint, he failed to exhaust.

**REMEDY 796667**: Floyd refers to this Remedy as starting "the entire ball rolling that has lead to the merry go round engaged in by the defendants." [14, p. 14]. Floyd filed a BP-9 for Remedy 796667, but it was rejected because the "nature of the remedy" required him to first file a BP-10. He then filed a BP-10, which was rejected by the Southeast Regional Office because he was required to first file a BP-9 at the institutional level. He then filed a BP-11 with the Central Office, but it was rejected because he needed to first file a BP-9 with the institution. He did not refile a B-9 after receiving the Central Office's rejection of his BP-11.

Floyd was given inaccurate information by the Institution when he was instructed to file a BP-10 first. The exhaustion process was confusing for this remedy because of the conflicting information given. However, as Defendants point out, Floyd still could have filed the required BP-9 and completed the administrative remedy process because he was provided correct information from both the Southeast Regional Office and from the Central Office. He failed to do so and asserts that these "conflicting and irreconcilable reasons" for rejections of his ARP's deprived him of an opportunity to be heard at a meaningful time and in a meaningful manner. [14, p. 3]. Floyd concedes that the law requires strict exhaustion but contends that he has attempted to exhaust and any further effort would have been futile under his circumstances. [14, p. 8].

**REMEDY 815870:** Floyd only filed a BP-9 at the institutional level for Remedy 815870. It was rejected because it was filed at the wrong level. Floyd never filed a BP-10 or a BP-11 after the rejection of Remedy 815870.

**B.     Has Plaintiff exhausted?**

In the undersigned's opinion, Plaintiff has not rebutted Defendants' supporting evidence, and dismissal is required under the requirement of strict exhaustion. Floyd has attempted to exhaust this matter of whether he should have been able to receive two issues of *Heavy Metal Magazine*, and he was given conflicting information regarding the appropriate steps to take, particularly as to Remedy 796667. Yet, as Defendants point out, he filed six distinct remedies regarding this issue, and he never completed the process on any of them. Floyd asserts that exhaustion would have been futile because prison

8

officials kept hindering him and preventing him from doing so by giving him false information. He suggests that the Bureau's remedy program was effectively unavailable to him due to the problems, and that he should be excused due to its futility. According to Floyd, he could not receive a ruling regarding the merits of why he was being denied the magazine issues, nor could he get a fair opportunity for a hearing.

The undersigned recognizes the difficulties Floyd faced in his attempts to complete the process in the required manner. Floyd did get rulings on the merits for his Remedy No. 813590. He filed both a BP-9 and a BP-10 for this remedy, and both were accepted for procedural correctness and denied on the merits. Specifically, his response from Warden Blackmon for issue #270, dated September 2, 2014, stated:

> The above mentioned magazine from **Heavy Metal Media, LLC** has been rejected in accordance with the Bureau's Program Statement on Incoming Publications (PS 5266.11), which provides in part:
>
> **The Warden may reject a publication only if it is determined detrimental to the security, good order, discipline of the institution or if it might facilitate criminal activity**.
>
> A copy of this notification has been sent to publisher or sender who may obtain an independent review of this rejection by writing to the Regional Director .... Your Appeal must be received in the Regional Director's office within twenty (20) days of this letter.

Exhibit C, [10-2, p 1] (emphasis in original).

The response from Warden Blackmon for #272, dated March 11, 2015, states the same, with the addition of the following paragraph:

9

> The above material is sexually explicit material which by its nature or content poses a threat to the security, good order or discipline of the institution or facilitates criminal activity.

[10-2, p. 6].

Floyd also filed a BP-10, and both the BP-9 and BP-10 were accepted as procedurally correct but denied on the merits. Floyd then filed a B-11 on Remedy 813590, and it was received on June 1, 2015, by the Bureau's Central Office. Before the 40 days passed for the Central Office to respond, Floyd filed this lawsuit on June 23, 2015, approximately 17 days before the period ended. Had he simply waited until the 40 days expired, he would have exhausted his administrative remedies as required under the law.

The Court in *Wilson* explained that a prisoner must pursue the grievance remedies to the conclusion, regardless of whether the prison responds. It reiterated that our circuit has taken a "strict" approach to § 1997e's exhaustion requirement, and that substantial compliance is not sufficient— instead a prisoner must exhaust administrative remedies *properly. Wilson,* 776 F.3d at 299-300, citing *Dillon,* 596 F.3d at 268. After the deadline for responding to one step expires, the prisoner may move forward to the next step. Only when time to respond to the *final step* expires has exhaustion occurred. Floyd does not dispute that he filed this lawsuit on June 23, 2015, before receiving a response from the Central Office. This admission, along with the supporting documents provided by Defendants, is conclusive in this case. The holding in *Wilson* applies to Floyd and requires that his lawsuit be dismissed.

Floyd rightly complains about the handling of his grievances, particularly when he was given the incorrect information regarding Remedy 79667. However, the fact that his grievance was improperly processed still does not excuse him from exhaustion. *See Taylor v. Burns,* 371 Fed. Appx. 479, 481 (5th Cir. 2010) ("Even if the relief [Plaintiff] sought was unavailable ... as a result of the way in which his grievance was processed, he is not excused from the exhaustion requirement."). Floyd bears the burden of demonstrating the futility or unavailability of administrative review, and he has failed to meet this burden. He obviously had access to the remedy program at FCC and could have exhausted his claims regarding the magazine. Floyd sets forth his attempts to exhaust, but his 'conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence' will not satisfy the nonmoving party's burden on summary judgment." *Garner v. Moore,* 536 Fed. Appx. 446, 449 (5th Cir. 2013) (quoting *Freeman v. Tex. Dep't of Criminal Justice,* 369 F.3d 854, 860 (5th Cir. 2004). In this case, Defendants' "uncontested, competent summary judgment evidence establishes beyond peradventure" that the remedy program at FCC was available to Floyd and that he failed to complete it regarding the specific claims set forth in the Complaint. *See Fruge v. Cox,* Civil Action No. 14-0153, 2015 WL 964560 at *4 (W.D. La., March 4, 2015).

Because Floyd failed to exhaust his administrative remedies, the Court need not reach the merits of the claims. *See Marshall v. Price,* 239 F.3d 365 (5th Cir. 2000) (declining to reach the merits of an inmate's Section 1983 claims after finding that he failed to exhaust his administrative remedies). Because the merits of his case have not

11

been examined, the dismissal should be without prejudice.  Floyd may bring the issue before the Court in the future, but he must exhaust his administrative remedies first.

### III. CONCLUSION

For the reasons discussed in this Report and Recommendation, the undersigned recommends that Defendants' Motion for Summary Judgment be **granted** and that Plaintiff's Complaint be dismissed without prejudice.  Defendants' Motion to Substitute Party [7] should be dismissed as moot.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  28 U.S.C. §636, *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Respectfully submitted, this the 9th day of August, 2016.

　　　　　　　　　　　　　　　　　　 /s/ Linda R. Anderson
　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE